Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| VILMA DÍAZ SANTIAGO  Recurrida  v.  COMPAÑÍA DE SEGURO IHM, **MUNICIPIO DE JAYUYA** y otros  Peticionarios | TA2025CE00125 | *CERTIORARI* Procedente del Tribunal de Primera Instancia, Sala Superior de Utuado  Civil Núm.: UT2024CV00478 (10)  Sobre: Caída |

Panel integrado por su presidenta, la Juez Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

Álvarez Esnard, jueza ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 19 de agosto de 2025.

Comparece ante nos el Municipio de Jayuya ("Municipio" o "Peticionario") mediante *Certiorari* presentado el 9 de julio de 2025. Nos solicita la revocación de la *Resolución y Orden,* emitida el 27 de mayo de 2025, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Utuado ("foro primario" o "foro *a quo*"). Por virtud del aludido dictamen, el foro primario declaró *No Ha Lugar* la solicitud de desestimación presentada por el Peticionario.

Por los fundamentos que expondremos a continuación, **denegamos** el recurso de epígrafe.

### I.

El 23 de septiembre de 2024, la señora Vilma Díaz Santiago ("señora Díaz Santiago" o "Recurrida") instó *Demanda* sobre daños y perjuicio contra el Restaurante la Casa de los Monchis ("Restaurante"), Compañía de Seguros IHM y otros

demandados de nombre ficticio.[1] Mediante la misma, adujo que el 28 de noviembre de 2023, ésta caminaba junto a dos (2) compañeras de trabajo por la acera ubicada frente al Restaurante sito en el municipio de Jayuya. Detalló que, al pasar por el área de los zafacones del aludido Restaurante, resbaló con el agua sucia o lixiviado que provenía de los zafacones y que cubría la acera. Agregó que, a consecuencia de esta caída, tuvo que ser trasladada al CDT de Jayuya y posteriormente fue transportada a la sala de emergencia del Hospital San Lucas. Alegó además, que obtuvo un diagnóstico de fractura de su codo derecho y "hematomas en todo su lado derecho, incluyendo el hombro".[2] La Recurrida valoró estos daños en ciento cincuenta mil dólares ($150,000.00). Igualmente aludió que sufrió angustias mentales, las cuales valoró en cincuenta mil dólares ($50,000.00). En vista de lo anterior, la señora Díaz Santiago solicitó compensación por las cantidades antes descritas.

En respuesta, el 6 de diciembre de 2024, el señor Salvador Nazario Vargas haciendo negocios como el Restaurante presentó *Contestación a Demanda*.[3] Mediante esta, negó ciertas alegaciones y levantó algunas defensas afirmativas. Entre estas, afirmó que "[f]rente al Restaurante La Casa de los Monchis no hay zafacones. Existen solo los espacios de estacionamiento. El área de depósito de basura tanto de el [sic] restaurante como de dos negocios adicionales que operan en el lugar, está a unos 45 pies de distancia y está bajo el control del Municipio Autónomo de Jayuya".[4] Posteriormente, el 10 de diciembre de 2024, la

---

[1] Véase, SUMAC TPI, Entrada 1.
[2] *Íd.*, pág. 2.
[3] Véase, SUMAC TPI, Entrada 7.
[4] *Íd.*, pág. 1.

Recurrida presentó *Escrito Solicitando Enmienda a la Demanda.*[5] En lo pertinente, el restaurante esbozó[6] en su alegación responsiva que advino en conocimiento de que la acera donde ocurrió la referida caída estaba "bajo el control, jurisdicción y mantenimiento del Municipio de Jayuya." En ese sentido, acompañó este escrito con la *Demanda Enmendada* en la que incluyó al Municipio y al señor Salvador Nazario Vargas como parte codemandada. Dicha enmienda fue autorizada por el foro primario mediante *Resolución Interlocutoria* emitida y notificada el 10 de diciembre de 2024.[7]

Surge del expediente que, el 31 de marzo de 2025, la señora Díaz Santiago presentó *Moción Informativa sobre Diligenciamiento de Emplazamiento* en la que notificó que diligenció el emplazamiento al Municipio. Así las cosas, el 2 de abril de 2025, el foro primario emitió *Orden* en la cual dispuso que el emplazamiento al Municipio fue diligenciado el 19 de marzo de 2025 y le concedió a esta parte hasta el 19 de mayo de 2025 para que presentara su alegación responsiva.[8]

No empece a lo anterior, el 3 de abril de 2025, el Municipio presentó *Moción de Desestimación por Falta de Notificación.*[9] Mediante esta, argumentó que procedía la desestimación de la causa de acción sobre la Recurrida, pues esta no cumplió con el requisito jurisdiccional establecido en el Artículo 1.051 del Código Municipal de Puerto Rico, Ley Núm. 107-2020, según enmendada, 21 LPRA sec. 7082 (Supl. 2025). Agregó que dicha disposición establece que toda reclamación por daños en contra de un municipio requiere que se notifique

---

[5] Véase, SUMAC TPI, Entrada 9.
[6] *Íd.*, pág. 1.
[7] Véase, SUMAC TPI, Entrada 10.
[8] Véase, SUMAC TPI, Entrada 27.
[9] Véase, SUMAC TPI, Entrada 28.

de forma escrita al alcalde en un plazo de noventa (90) días siguientes a la fecha en que el reclamante tuvo conocimiento de los daños. Como corolario de lo anterior, el Municipio expuso que la Recurrida no cumplió con el requisito jurisdiccional de notificación en el término de noventa (90) días establecido en el Artículo 1.051 del Código Municipal de Puerto Rico, *supra*. Por tal motivo, el Peticionario solicitó la desestimación del presente pleito con perjuicio.

Por su parte, el 22 de mayo de 2025, la Recurrida, presentó *Oposición a Moción de Desestimación por Falta de Notificación y Solicitud de Enmienda a la Demanda.*[10] Por virtud de esta, sostuvo que el término para notificar al Peticionario comenzó a transcurrir cuando esta parte, entiéndase la señora Díaz Santiago, advino en conocimiento de la posible responsabilidad del Municipio por sus daños.

Tras evaluar la postura de las partes, el 27 de mayo de 2025, notificada al día siguiente, el foro primario emitió *Resolución y Orden* en la que declaró *No Ha Lugar* la moción de desestimación instada por el Municipio.[11] Inconforme, el 11 de junio de 2025 el Peticionario presentó *Moción de Reconsideración.*[12] Mediante esta, reiteró su postura en cuanto a que la Recurrida no cumplió con el término jurisdiccional de noventa (90) de notificación que exige el Código Municipal de Puerto Rico, *supra*. Evaluado este escrito, el 11 de junio de 2025, el foro primario emitió y notificó *Resolución Interlocutoria* en la que declaró *No Ha Lugar* la solicitud de reconsideración instada por el Peticionario. [13]

---

[10] Véase, SUMAC TPI, Entrada 32.
[11] Véase, SUMAC TPI, Entrada 36.
[12] Véase, SUMAC TPI, Entrada 37.
[13] Véase, SUMAC TPI, Entrada 38.

Aun inconforme, el 9 de julio de 2025, el Municipio presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> Primer Error: Erró el Tribunal de Primera Instancia al declarar no ha lugar la Moción de Desestimación por Falta de Notificación, al ignorar que la parte recurrida incumplió con el Requisito Jurisdiccional de notificación previa al municipio, conforme a lo dispuesto en el Artículo 1.051 del Código Municipal de Puerto Rico, 21 L.P.R.A. § 7082.

> Segundo Error: Erró el Tribunal de Primera Instancia al declarar no ha lugar la Moción de Desestimación por Falta de Notificación, a pesar de que la parte recurrida no notificó por escrito al alcalde dentro del Plazo de Caducidad improrrogable de noventa (90) días establecido en el Artículo 1.051 del Código Municipal de Puerto Rico, 21 L.P.R.A. § 7082.

El 11 de julio de 2025 esta Curia emitió Resolución en la que le concedió a la parte Recurrida hasta el 21 de julio de 2025 para que se expresara en torno al recurso presentado. Posteriormente, el 17 de julio de 2025, la señora Díaz Santiago presentó *Escrito Solicitando Prórroga* en la solicitó un término adicional de diez (10) días para presentar su postura. Evaluado este escrito, el 18 de julio de 2025, esta Curia le concedió a la Recurrida hasta el 6 de agosto de 2025 para que presentara su posición. Oportunamente, el 5 de agosto de 2025, la Recurrida presentó *Oposición* [sic] *a Peticion* [sic] *de Certiorari.* Con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa jurídica aplicable al caso ante nuestra consideración

## II.

### A. Certiorari

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.,* 203 DPR 708, 718 (2019). "El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía

revisar las determinaciones de un foro inferior". *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023). Véase, además, *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1, establece que el recurso de *certiorari* solo se expedirá cuando se recurra de (1) una resolución u orden sobre remedios provisionales o *injunction* o (2) la denegatoria de una moción de carácter dispositivo. Por excepción, se puede recurrir también de: (1) decisiones sobre la admisibilidad de testigos o peritos; (2) asuntos de privilegios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia, o (4) en casos que revistan interés público. *Íd.* De igual manera, puede revisarse "cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia". *Íd.* Los límites a la facultad revisora del foro apelativo tienen como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp. et al.,* 202 DPR 478, 486-487 (2019).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni en ausencia de parámetros. *BPPR v. SLG Gómez-López,* 213 DPR 314, 337 (2023). La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, 215 DPR __ (2025), señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari. Íd.* Estos criterios son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction, supra,* págs. 712-713. No obstante, "[a]l denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión". 32 LPRA Ap. V, R**. 52.1.**

### B. *El requisito de notificación al Municipio en una ca de acción en daños*

El *Código Municipal de Puerto Rico,* Ley Núm. 107 de 14 de agosto de 2020, según enmendada, 21 LPRA sec. 7001 *et seq.* (Supl. 2025)*,* establece en su Artículo 1.051 el procedimiento que ha de seguirse a la hora de entablar una causa de acción contra un municipio. En lo pertinente, el aludido Artículo dispone:

> Toda persona que tenga reclamaciones de cualquier clase contra un municipio por daños personales o a la propiedad, ocasionados por la culpa o negligencia del municipio, deberá presentar una notificación escrita dirigida al Alcalde, haciendo constar en forma clara y concisa la fecha, lugar, causa y naturaleza general del daño sufrido. En dicha notificación se especificará, además, la cuantía de la compensación monetaria o el tipo de remedio adecuado al daño sufrido, los nombres y direcciones de sus testigos y la dirección del reclamante, y en los casos de daño a la persona, el lugar donde recibió tratamiento médico en primera instancia.
>
> (a) *Forma de entrega y término para hacer la notificación.* — Dicha notificación se entregará al Alcalde, se remitirá

por correo certificado a la dirección designada por el municipio o por diligenciamiento personal, acudiendo a la oficina del Alcalde durante horas laborables, y haciendo entrega de la misma a su secretaria personal o al personal administrativo expresamente autorizado a tales fines. **La referida notificación escrita deberá presentarse dentro de los noventa (90) días siguientes a la fecha en que el reclamante tuvo conocimiento de los daños reclamados.** Si el reclamante está mental o físicamente imposibilitado para hacer dicha notificación en el término antes establecido, no quedará sujeto al cumplimiento del mismo, debiendo hacer la referida notificación dentro de los treinta (30) días siguientes a la fecha en que cese la incapacidad.

[...]

(b) *Requisito jurisdiccional.* — No podrá responsabilizarse, ni iniciarse acción de clase alguna contra un municipio, en reclamaciones por daños causados por culpa o negligencia, a menos que el reclamante haga la notificación escrita, en la forma, manera y en los plazos de caducidad dispuestos en este Artículo. No constituirá una notificación válida, aquella que se presente en alguna otra entidad estatal o municipal que no sea la del municipio contra el que se presenta la reclamación (Énfasis nuestro). 21 LPRA sec. 7082 (Supl. 2025)*.*

### C. Responsabilidad Civil Extracontractual

En nuestro ordenamiento jurídico, "[l]a persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo." Artículo 1536 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 10801 (Supl. 2025). De eta forma, una causa de acción por daños requiere que se demuestren tres (3) requisitos esenciales: (1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción u omisión del demandado, y (3) el acto u omisión, el cual tiene que ser culposo o negligente. *Mena Pamias et al. v. Mélendez et al.*, 212 DPR 758, 768 (2023).

Para que exista responsabilidad como consecuencia de una omisión hay que considerar: (1) la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño, el incumplimiento del cual constituye la antijuridicidad, y (2) si de haberse realizado el acto omitido se

hubiera evitado el daño. *Siaca v. Bahia Beach Resort*, 194 DPR 559, 606 (2016).

Ahora bien, el concepto de daño se entiende como "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra".

*Sagardia De Jesús v. Hosp. Aux. Mutuo,* 177 DPR 484, 505 (2009). En ese sentido, nuestro más Alto Foro ha explicado la división que existe entre los daños patrimoniales y los no patrimoniales. *Íd.* El daño patrimonial es aquel menoscabo valorable en dinero sobre el patrimonio de la persona que ha sido perjudicada. *Íd.*, pág. 506. Por otro lado, el daño no patrimonial es aquel que en principio "no tiene base equivalencial que caracteriza a los patrimoniales, por afectar precisamente a elementos o intereses de difícil valoración pecuniaria". *Íd.* citando a J. Santos Briz, *Tratado de Derecho Civil*, Barcelona, Ed. Bosch, 2003, T. III, pág. 460.

Por otro lado, el Tribunal Supremo de Puerto Rico ha expresado "a la luz de la teoría cognoscitiva del daño, este Tribunal ha expresado que el punto de partida del periodo prescriptivo comienza desde que el agraviado: *(1) supo del daño, o razonablemente debió conocerlo; (2)* **quién fue su autor**, *y (3) desde cuándo éste conoce los elementos necesarios para ejercitar efectivamente la acción* (Énfasis suplido). *Toro Rivera v. ELA et al.,* 194 DPR 393, 416 (2015). Así pues, nuestro Máximo Foro resolvió que "el término para ejercer una acción no comienza a transcurrir desde que sucede el daño, sino desde que el agraviado conoce todos los elementos necesarios para iniciar una reclamación". Íd. Asimismo, por analogía concluyó que "la

fecha para el cómputo del término en el cual existe el deber de notificar al Estado, es aquella que cumple con los requisitos esbozados aplicables al inicio del término prescriptivo. (Énfasis suprimido)" *Íd.*

**III.**

Expuesto el marco jurídico y ponderados los argumentos presentados por las partes, resolvemos que no se han producido las circunstancias que exijan nuestra intervención en esta etapa de los procedimientos. Al amparo de los criterios que guían nuestra discreción, no intervendremos en la determinación recurrida. En el presente caso, el Peticionario no ha demostrado que el foro de instancia se excedió en el ejercicio de su discreción, ni que erró en la interpretación del derecho. Tampoco constató que el abstenernos de interferir en la determinación recurrida constituiría un fracaso irremediable de la justicia en esta etapa de los procesos. Por lo cual, somos del criterio que en el presente caso procede que se deniegue el recurso de *certiorari* de epígrafe.

Nuestra determinación de no intervenir en los méritos de la decisión recurrida en estos momentos no constituye una adjudicación de la controversia existente entre las partes ni prejuzga el asunto planteado por estas.

**IV.**

Por los fundamentos anteriormente expuestos, **denegamos** el recurso de epígrafe.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones